**24 C.C.P.A.(Patents)**

### In re TISDALL.
### Patent Appeal No. 3751.

Court of Customs and Patent Appeals.
Feb. 1, 1937.

GRAHAM, Presiding Judge, dissenting.

---

Tracy R. V. Fike, of New York City (Frederic P. Warfield and Griffith Beems, both of New York City, of counsel), for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

LENROOT, Associate Judge.

This appeal brings before us for review a decision of the Board of Appeals of the United States Patent Office, affirming a decision of the Examiner rejecting all of the claims of appellant's application as unpatentable in view of the cited prior art. Eight claims are involved in this appeal, four of which are product claims, the others being process claims. Claims 5, 17, and 22 are illustrative of the claims before us and read as follows:

"5. A bread comprising shortening as an ingredient, said shortening comprising an oil activated to possess vitamin D properties in a desired potency.

"17. A breadstuff comprising shortening as an ingredient, said shortening comprising a relatively small amount of vegetable oil in which has been dissolved a relative concentration of activated ergosterol.

"22. A method of making bread which comprises forming a solution in oil of irradiated ergosterol, combining said solution with the usual ingredients of bread dough, said ingredients being present in the usual proportions except that said oil solution replaces an equivalent amount of the usual shortening, said material having such a high vitamin-D potency and being of such nature that its presence in bread dough will in no way change the normal taste, color or consistency of the bread, and baking."

The references cited are: Hoffmann, 1,431,525, October 10, 1922; Hoffmann, 1,579,447, April 6, 1926; McGroarty, 1,863,277, June 14, 1932; Steenbock, 1,680,818, August 14, 1928; Windaus, 1,873,942, August 23, 1932; Steenbock (British), 314,942, Com. Not Acc; Johnson (British), 321,992, November 25, 1929; Elias (British), 266,101; Nature, December 31, 1927, p. 955; Can. Med. Jour., February, 1931, pp. 210–213; Biochem. Jour., vol. 19 (1925), pp. 733–736.

Appellant's application relates to the introduction of vitamin D into bread, which is accomplished by the use of activated ergosterol as an ingredient, in addition to the usual ingredients employed in the making of bread. The ergosterol is first activated by means of ultra violet rays, and then combined with an oil which is used as a shortening, the amount of shortening ordinarily used in the making of bread being reduced by the amount of oil employed carrying the activated ergosterol.

The statement of the Examiner discusses at length the history of vitamin D and its value in the prevention of rickets in the human body. From this, and from the references, it appears that activated ergosterol produces vitamin D in satisfactory quantities.

In appellant's brief we find a concise statement respecting ergosterol and vitamin D, which is conceded to be correct. It reads as follows:

"Ergosterol is found chiefly in fungi, in ergot of rye and in yeast. There are minute traces of ergosterol in the human skin, and the beneficial results of sunlight in the treatment of rickets are apparently due to the activation of these minute traces from the ultra-violet rays of the sun. When ergosterol is exposed to ultra-violet irradiation in the laboratory, it loses its crystalline character and becomes resinous, and this resinous substance is specific in curing rickets, and may be as much as a million times more potent than codliver oil.

"In addition to its relationship to the prevention and cure of rickets, vitamin D has an important place in the calcium and phosphorus metabolism of the body, particularly during periods of growth, pregnancy and lactation. It plays an important part in the prevention of dental caries, tetany and osteomalacia, and the administration of this vitamin increases resistance against disease. But no other vitamin is so sparsely distributed in natural foods as is vitamin D. Codliver oil and egg yolk are the only substances containing appreciable amounts. Milk may contain vitamin D, depending on the diet of the cow, and varying with the season, but from the nutritional standpoint, milk as a source is negligible. Butter may have traces."

While a large number of references are cited, the Board of Appeals specifically relied only upon the patents to McGroarty and Elias. The Examiner was of the opinion that, the medicinal value of vitamin D being well known at the time of filing appellant's application, as shown by the references, there would be no invention in incorporating this vitamin into bread, the bread being used as a vehicle for vitamin D, even in the absence of any prior art showing that it had been used in bread. The Board did not discuss this ground of rejection. The Examiner, however, further rejected the claims upon the ground that the patent to Elias and the patent to McGroarty did teach the use of vitamin D in bread, and in view of that fact and further in view of the cited prior art teaching the beneficial uses of vitamin D, it did not require invention to create the product claimed by appellant or to practice the process disclosed by him.

Appellant's process is described in the Examiner's statement as follows: "The process comprises mixing flour, water and yeast and then adding thereto an oil and salt solution of irradiated ergosterol. Such oil that is used as a carrier for the irradiated ergosterol replaces an equal amount of shortening; that is, if a pound of oil be used for the ergosterol, one pound less of shortening is employed in the bread recipe, thus the added oil for the ergosterol does not unbalance the shortening-batter ratio. Applicant then bakes the dough in a conventional manner. Rolls, biscuits and similar panary products may be prepared as well as bread."

It is unnecessary to analyze the references other than Elias and McGroarty, for it is clear that the latter are much more pertinent than are the others cited. With respect to the references other than Elias and McGroarty, it is sufficient to say that they disclose the use of vitamin D to be administered in the form of a medicine, the activation of the ordinary ingredients of certain foods, but not of bread, and the activation of ergosterol.

The patent to Elias discloses a process for the production of foodstuffs containing vitamin D. The patent states:

"According to the present invention, I have found that the full-food value can be imparted and retained for a reasonably long period to biscuits, bread, cakes and similar preparations by conducting the process of baking in the presence of artificially produced ultra-violet rays, the heating being obtained by one or more sources of both light and radiant heat for which purpose I provide an oven with one or more ultra-violet lamps preferably a quartz mercury vapour lamp, and a series of incandescent luminous burners or other appropriate means for producing heat as well as light and to maintain a temperature of about 90° C. It is even found advantageous to reduce the temperature to some 60° C. towards the centre of the oven or at the end of the operation when using a travelling apron oven process and in this manner the full-food value of the

material is retained without the serious injury to the vitamins, natural sugar, enzymes and soluble proteins. * * *

" * * * In ordinary baking processes, the vitamin D is attenuated or destroyed but is built up again if any cholesterol is present if subjected to ultra violet rays and the known processes have not provided for baking in the presence of ultra violet rays which enable the baking to be carried out with practically no loss of vitamin D particularly where, in addition, there is light and 'radiant heat' and providing of course that the temperature is not excessive."

We would observe that this patent discloses the irradiation of only the ordinary ingredients of bread and similar food products, and that it was the theory of the patentee that in the ordinary baking processes vitamin D was attenuated or destroyed, and that the irradiation restored or preserved the original content of vitamin D.

The patent to McGroarty discloses subjecting a mixture of certain of the ordinary ingredients of bread to the direct action of ultra violet rays, and thereafter incorporating such mixture in the dough. The patent states: "In one embodiment of the invention I prepared an emulsion of salt, sugar, powdered whole milk, hydrogenated shortening, and mineral yeast food by dissolving the salt and sugar in warm water, adding to this solution the powdered milk and yeast food, whipping this mixture, emulsifying it and adding melted hydrogenated shortening to it during the initial stage of the emulsification and I subjected the mixture during the emulsification to the direct action of ultra-violet rays until activated. Vegetable shortening was used on account of its relatively high ergosterol content, and whole milk was used on account of its butter fat. Tests were then made on commercial scale and the amount of hydrogenated shortening was increased but the quantities of the other ingredients were undisturbed."

In this patent, as in Elias, no additional ingredients are incorporated in the bread, but only the ordinary ingredients are treated for the production of vitamin D. The principal difference between the McGroarty process and that of Elias is that in the former certain of the ingredients of bread are subject to the direct action of ultra violet rays before such ingredients are incorporated in the bread dough, while in Elias the dough itself is subjected to the action of ultra violet rays during the baking process. The McGroarty patent states that, because the dough is largely opaque, irradiation after mixing the ingredients is unsatisfactory, and it is for that reason he subjects certain of the ingredients of bread to irradiation before the dough is formed.

We would here observe that in appellant's brief it is contended that the patent to McGroarty was not available as a reference herein for certain reasons therein stated, but on oral argument appellant's counsel stated that, for the purposes of this case, this point was waived, and it is therefore unnecessary for us here to consider it.

That appellant's process and product is novel and useful was conceded by the Patent Office tribunals, and by the Solicitor for the Patent Office, but the ground of rejection is that, in view of the references, there was nothing in applicant's product or process which required the exercise of the inventive faculty.

In so far as the claims before us do not call for activated ergosterol as an ingredient additional to activated ingredients ordinarily employed in the production of bread, we are in agreement with the Patent Office tribunals. We think that claims 5, 6, and 18 are so broad as to embrace merely the activation of the ordinary ingredients of bread, disclosed in the prior art, and therefore, as to such claims, the decision of the Board of Appeals should be affirmed.

With respect to the remaining claims, however, viz., 10, 17, 21, 22, and 24, we are of the opinion that they clearly call for the employment of activated ergosterol as an ingredient of bread, in addition to any ergosterol which may be found in the ordinary ingredients of bread. This addition is not suggested by any of the references relied upon for rejection of the claims, and we do not think that such addition would be obvious to one skilled in the art. It would seem that if this was obvious it would have at least been suggested in some of the large number of references cited. Of the principal references relied upon, Elias taught that ordinary baking temperature would attenuate or destroy vitamin D. While, apparently, McGroarty discovered that this was not the case, it does not seem to have occurred to him that activated ergosterol could be employed as an additional ingredient. Necessarily the amount of vitamin D in bread produced by his process would vary

according to the quantity of ergosterol found in the ordinary ingredients of bread.

In appellant's product and process the minimum amount of vitamin D in a loaf of bread is predetermined by the quantity of activated ergosterol used as an additional ingredient, and thus a uniform quantity of vitamin D is found in the product.

In our opinion appellant's process and product embraced in the group of claims last above named was not obvious from the prior art, and he is entitled to a patent therefor.

For the reasons stated herein, the decision of the Board of Appeals is affirmed as to claims 5, 6, and 18, and reversed as to claims 10, 17, 21, 22, and 24.

Modified.

GRAHAM, Presiding Judge, dissents as to claims 10, 17, 21, 22, and 24.